IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:26-cv-01212-CCE-LPA

| | | |
|---|---|---|
| TREY ALLEN SIMPSON,<br><br>*Plaintiff*,<br><br>vs.<br><br>SECURED TECH SOLUTIONS LLC d/b/a SECURED TECH,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Secured Tech Solutions LLC d/b/a Secured Tech ("Secured Tech"), by and through undersigned counsel, submits this memorandum in support of its motion to dismiss Plaintiff Trey Allen Simpson's ("Simpson") Complaint. [DE 2.]

## STATEMENT OF THE CASE

This lawsuit arises from Simpson's previous employment with Secured Tech. Simpson filed his Complaint on October 15, 2026, and it was served on November 4, 2026. The Complaint asserts causes of action against Secured Tech for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, disability discrimination under the Americans with Disabilities Act ("ADA"), and wage-payment claims arising under state law.

Even accepting Simpson's factual allegations as true, the Complaint does not allege facts sufficient to state plausible claims against Secured Tech. Secured Tech

therefore moves to dismiss Simpson's federal claims and asks the Court to decline supplemental jurisdiction over his remaining state-law claims.

## STATEMENT OF ALLEGED FACTS

Simpson worked remotely for Secured Tech. [DE 2 p. 7, ¶¶ 2, 4.] He alleges that Secured Tech did not commemorate "federally recognized Black holidays such as Martin Luther King Jr. Day and Juneteenth." [Id. p. 7, ¶ 4.]

In March 2026, Simpson participated in a 90-day self-review and provided feedback suggesting that Secured Tech lacked ethnic representation. [Id. at p. 8, ¶ 4.] Simpson alleges that Secured Tech's founders learned of his feedback and expressed hostility and anger about it. [Id.] Simpson does not claim that the founders made those statements to him; instead, he alleges that his manager, Ms. Cline, relayed their reaction to him. [Id.]

Secured Tech terminated Simpson's employment on April 14, 2026, for performance-related reasons. [Id. at pp. 8–9, ¶¶ 4–5.] Simpson disputes those reasons and alleges that his termination was motivated by his race, disability, and prior comments concerning Secured Tech's lack of diversity. [Id.] Simpson also alleges that Secured Tech failed to compensate him for his final week of work. [Id. at p. 9, ¶ 9.]

## ISSUES PRESENTED

1. Whether Simpson has failed to state a claim for race discrimination under Title VII.

2. Whether Simpson has failed to state a claim for race discrimination under 42 U.S.C. § 1981.

3. Whether Simpson has failed to state a claim for retaliation under Title VII and 42 U.S.C. § 1981.

4. Whether Simpson has failed to state a claim for disability discrimination or failure to accommodate under the ADA.

5. Whether, upon dismissal of Simpson's federal claims, the Court should decline to exercise supplemental jurisdiction over his remaining state-law claims.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Ad. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although a court must accept all the factual allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

In discrimination cases, while the plaintiff does not need to prove a prima facie case to survive a motion to dismiss, he still must allege facts sufficient to satisfy the stringent pleading standard in Twombly and Iqbal. Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017). Courts may still look at the elements of a prima facie case for guidance as to whether a plaintiff has stated a claim. Johnson v. Baltimore City, Maryland, 163 F.4th 808 (4th Cir. 2026) (referencing prima facie case of discrimination to analyze whether district court erred in granting motion to dismiss);

see also Johnson v. Lemonds, No. 1:15CV410, 2016 WL 447494, at *4 (M.D.N.C. Feb. 4, 2016) (collecting cases referencing prima facie case of discrimination at the motion to dismiss stage).

## ARGUMENT

### I. Simpson cannot state a claim against Secured Tech for race discrimination under Title VII.

Simpson alleges that Secured Tech terminated him because of his race. [DE 2 p. 9, ¶ 6.] To sustain that claim, Simpson must plausibly allege that (1) he is a member of a protected class, (2) he was discharged, (3) he was fulfilling his employer's legitimate expectations at the time of his discharge, and (4) the discharge occurred under circumstances permitting a reasonable inference of race discrimination. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). At a minimum, he must allege facts sufficient to raise a plausible inference that he suffered an adverse action because of his race. Holloway v. Maryland, 32 F.4th 293, 299 (4th Cir. 2022). Simpson fails to do so.

To support his claim, Simpson first points to Secured Tech's allegedly limited racial diversity. [DE 2 p. 9, ¶ 6.][1] Essentially, Simpson asks the Court to infer that because Secured Tech's workforce lacks diversity, Secured Tech must have

---

[1] Simpson also points to the "immediate hostility following his complaints regarding ethnic underrepresentation." [DE 2 p. 9, ¶ 6.] That allegation is better analyzed under his retaliation claim. But to the extent Simpson relies on it to support his discrimination claim, that statement is nothing more than a conclusory allegation with no factual enhancement to support that the founders' purported hostility was because of Simpson's race.

terminated him because of his race. But a lack of diversity, standing alone, does not raise an inference of discrimination. Vallejo v. Keller Indep. Sch. Dist., 816 F. Supp. 3d 636, 648 n. 33 (N.D. Tex. 2026) ("Lack of diversity itself does not demonstrate racial animus . . . ."); Altizer v. City of Roanoke, Virginia, No. CIV.A. 7:02CV00484, 2003 WL 1456514, at *4 (W.D. Va. Mar. 21, 2003), aff'd sub nom. Altizer v. City of Roanoke, 78 F. App'x 301 (4th Cir. 2003) (finding that plaintiff's concern about the lack of diversity in the employer's ranks without more is not evidence of discriminatory animus.) Thus, without more, Secured Tech's allegedly limited racial diversity does not plausibly suggest that Simpson was terminated because of his race.

Simpson also relies on Secured Tech's alleged refusal to commemorate certain federal holidays like Martin Luther King Jr. Day and Juneteenth. [DE 2 p. 7, ¶ 4.] That theory fails as well. There is no federal law requiring private employers to observe federal holidays. Thomas v. Global, Case No. 3:23-cv-00032-SMR-HCA 2023 WL 4230364 at *1 (May 23, 2023) (recognizing that federal law does not require private employers to observe Juneteenth in dismissing plaintiff's discrimination claims). More importantly, Simpson alleges no facts suggesting that Secured Tech's decision concerning which holidays to recognize was based on the race of its employees or otherwise reflected discriminatory treatment of Simpson because of his race. Secured Tech's alleged failure to recognize those holidays therefore does not plausibly connect Simpson's termination to his race.

Simpson alleges no other facts connecting his race to his termination. He does not allege that anyone at Secured Tech made racially derogatory comments about

him, referenced his race in connection with any employment decision, or otherwise treated him adversely because of his race. Nor does he identify a similarly situated employee outside his protected class who engaged in comparable conduct but received more favorable treatment. Accordingly, Simpson's claim for race discrimination must be dismissed.

## II. Likewise, Simpson cannot state a claim against Secured Tech for race discrimination under § 1981.

Simpson's claim for discrimination under § 1981 fails for similar reasons. To prevail under § 1981, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006). Then, a plaintiff must "show that the interference with a contractual interest would not have happened but for the plaintiff's race." Nanendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022).

Simpson alleges no facts plausibly showing that Secured Tech intentionally discriminated against him because of his race or that his termination would not have occurred but for his race. As explained above, his allegations concerning Secured Tech's allegedly limited racial diversity do not establish racial animus toward Simpson himself. Nor does Secured Tech's alleged refusal to recognize certain federal holidays support an inference that Simpson's race played any role in his termination.

Because Simpson fails to plausibly allege that his race was even a factor in his termination, he necessarily fails to allege the more demanding requirement that, but

for his race, his termination would not have occurred. The Court should therefore dismiss Simpson's § 1981 race-discrimination claim.

## III. Simpson cannot state a claim against Secured Tech for retaliation under Title VII or § 1981.

Both Title VII and 42 U.S.C. § 1981 prohibit employers from retaliating against an employee for engaging in protected activity. A retaliation claim requires the plaintiff to establish that (1) he engaged in protected activity, (2) he suffered an adverse action, and (3) there is a causal link between the protected activity and the adverse action. Laurent-Workman v. Wormuth, 54 F.4th 201, 212 (4th Cir. 2022); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (applying Title VII elements to 42 U.S.C. § 1981). Simpson's claims fail because he does not plausibly allege protected activity or a causal connection between any protected activity and his termination.

First, Simpson does not plausibly allege that he engaged in protected activity. Simpson alleges that he provided feedback concerning Secured Tech's alleged lack of ethnic representation. [DE 2 p. 8, ¶ 4.] But courts have recognized that general complaints concerning workplace diversity, standing alone, do not constitute protected activity. Chavis v. Univ. of N. Carolina-Chapel Hill, No. 1:24-CV-805, 2026 WL 1875746, at *7 (M.D.N.C. June 30, 2026) (finding that public statements about defendant's lack of diversity and inclusion challenges are not enough to establish a reasonable inference of discrimination); Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005) (finding a bare statement regarding a lack of diversity insufficient to constitute protected activity where it was not attributed to racial discrimination);

Trotter v. National Football League, 737 F. Supp. 3d 172, 183 (S.D.N.Y. 2024) (explaining that complaints about a lack of diversity, without suggesting that the lack of diversity resulted from discriminatory conduct, do not constitute protected activity).

That distinction applies here. Simpson does not allege that he complained that Secured Tech discriminated against non-white employees; that any particular hiring, termination, compensation, or other employment practice was racially discriminatory; or that he or another employee had been subjected to unlawful discrimination due to the lack of representation. Instead, he alleges only that he commented on Secured Tech's lack of ethnic representation. [DE 2 p. 8, ¶ 4.] A general complaint about the diversity is not, without more, opposition to an unlawful employment practice under Title VII or § 1981.

Second, even assuming Simpson's comments constituted protected activity, he does not plausibly allege a causal connection between those comments and his termination. Simpson alleges that Secured Tech's founders reacted with "hostility" and "anger" after learning of his comments. [DE 2 p. 7, ¶ 4.] But Simpson does not identify what the founders said, allege that either founder participated in the decision to terminate his employment, or allege that either founder influenced or communicated with the individuals allegedly involved in that decision. Instead, Simpson identifies HR Director Stacey Anouan, Chief of Staff Jessica Smith, and Vice President of Sales Macara Aloi in connection with his April 14 termination. [DE 2 p. 8, ¶ 4.] Simpson does not allege facts showing that any of those individuals knew

about his comments concerning ethnic representation or acted because of those comments. Donald v. Novant Health, Inc., No. 5:22-CV-363, 2025 U.S. Dist. LEXIS 184901, at *20 (E.D.N.C. Sept. 19, 2025) (finding that "[a]n employee cannot demonstrate a causal connection between protected activity and the employer's adverse action without alleging that the decisionmaker who took the adverse action knew that the employee had engaged in protected activity." (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007)). Thus, the Complaint does not plausibly connect the alleged hostility of the founders to the later decision to terminate Simpson.

Nor can the alleged "hostility" and "anger" itself constitute an adverse action necessary for a retaliation claim. Simpson does not allege that the founders said anything directly to him. Rather, he alleges that his manager relayed their reaction to him. [Id. at p. 8, ¶ 4.] He does not identify what was said, allege that the founders threatened any employment consequence, or explain how their reaction resulted in any change to his compensation, responsibilities, working conditions, or other employment circumstances. This secondhand report that management was displeased with Simpson's comments cannot constitute protected activity.

Accordingly, Simpson fails to plausibly allege that he engaged in protected activity or that any protected activity caused his termination. His retaliation claims under Title VII and § 1981 should therefore be dismissed.

## IV. Simpson cannot state a claim against Secured Tech for disability discrimination under the ADA.

Simpson alleges that Secured Tech terminated him "due to his disability and the perceived impacts of his medical condition." [DE 2 p. 9, ¶ 8.] To establish a claim for disability discrimination under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is qualified; and (3) that he suffered an adverse employment action because of his disability. Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015).

Even assuming his alleged medical condition qualifies as a disability under the ADA, the Complaint does not identify facts suggesting that his disability played any role in his termination. Simpson does not allege that anyone at Secured Tech knew of his disability, that any relevant decisionmaker made a discriminatory statement concerning his disability, criticized him because of his condition, or otherwise treated him adversely because of it. Nor does he identify any similarly situated nondisabled employee who received more favorable treatment. Simpson's bare assertion that he was terminated because of his disability does not permit a reasonable inference of disability discrimination.

To the extent Simpson also attempts to assert a failure-to-accommodate claim, that theory also fails. To establish a prima facie case for failure to accommodate, a plaintiff must prove: (1) he has a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) with a reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such an accommodation. Manning v. N. Carolina State Univ., 724 F. Supp. 3d 438,

456 (E.D.N.C. 2024). But to trigger an employer's duty to accommodate, an employee must communicate both his disability and the desire for an accommodation. Kelly v. Town of Abingdon, Virginia, 90 F.4th 158, 166 (4th Cir. 2024). Simpson's allegations fall short on numerous grounds.

Simpson does not allege that Secured Tech had notice of his disability or that Simpson ever requested a reasonable accommodation. Simpson does not identify the specific accommodation he sought, when he requested it, or how Secured Tech allegedly refused to make such an accommodation. Simpson also failed to assert any facts showing that there was a reasonable accommodation available or that the proposed accommodation would allow him to perform the essential functions of his position. Jordan v. Sch. Bd. of City of Norfolk, 640 F. Supp. 3d 431, 443 (E.D. Va. 2022) ("Plaintiff must not only allege that a reasonable accommodation was available, but that the proposed accommodation would allow Plaintiff to perform the essential functions of the position.") Accordingly, Simpson fails to state either a discriminatory-discharge or failure-to-accommodate claim under the ADA.

## V. To the extent Simpson asserts a claim for religious discrimination under Title VII, that claim also fails.

Although Simpson does not separately assert a claim for religious discrimination, the Complaint references alleged "non-neutral corporate culture" and Secured Tech's purported emphasis on Christian values. [DE 2 p.7, ¶ 11.] To the extent Simpson relies on those allegations to assert a claim for religious discrimination under Title VII, he fails to state a claim.

Title VII prohibits an employer from discriminating against an employee because of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). But Simpson does not identify his religion or religious beliefs, allege that Secured Tech knew of those beliefs, or allege that anyone at Secured Tech made comments concerning his religion or treated him adversely because of his religious beliefs. Nor does he allege facts connecting his religion, or his purported nonconformity with Secured Tech's alleged Christian culture, to the decision to terminate his employment.

Accordingly, to the extent the Complaint purports to assert a claim for religious discrimination or failure to accommodate under Title VII, that claim should be dismissed.

## VI. Because Simpson cannot state a claim against Secured Tech for any of his federal claims, the Court should decline to exercise supplemental jurisdiction over his remaining state law claims.

A district court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court has "'wide latitude' in this respect and consider[s] factors including 'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.'" Booker v. Armacell, LLC, No. 1:24-CV-1109-DAB-JGM, 2026 WL 622574, at *5 (M.D.N.C. Mar. 5, 2026) (citing Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995)). "Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims

by dismissing those claims without prejudice." Banks v. Gore, 738 F. App'x 766, 773 (4th Cir. 2018).

That approach is appropriate here. This case is in its early stage, and dismissal of Simpson's federal claims would leave only state-law issues concerning allegedly unpaid wages. Those claims implicate state law, including which state's wage-payment law applies to Simpson's employment. Accordingly, if the Court dismisses Simpson's federal claims, it should decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss those claims without prejudice.

## CONCLUSION

For the foregoing reasons, Simpson's Complaint against Secured Tech should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 24th day of November, 2026.

**CRANFILL SUMNER LLP**

By: /s/ Alexandra C. Williams
ALEXANDRA C. WILLIAMS
N.C. State Bar No. 60709
5535 Currituck Drive, Suite 210
Wilmington, NC 28403
Telephone: (910) 777-6000
Facsimile: (910) 777-6111
E-mail: awilliams@cshlaw.com
*Attorney for Defendant*

**CERTIFICATE OF WORD COUNT**

The undersigned certifies that this memorandum complies with Local Civ. Rule 7.3(d)(1). The number of words in this memorandum, exclusive of the caption, signature lines, certificate of service, certificate of word count, and any cover page or index, does not exceed 6,250, according to the word count function of the word processing software used to prepare the memorandum.

This the 24th day of November, 2026.

**CRANFILL SUMNER LLP**

By: /s/ Alexandra C. Williams

ALEXANDRA C. WILLIAMS
N.C. State Bar No. 60709
5535 Currituck Drive, Suite 210
Wilmington, NC 28403
Telephone: (910) 777-6000
Facsimile: (910) 777-6111
E-mail: awilliams@cshlaw.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, and a copy will be sent by U.S. Mail addressed to the following party:

Trey Allen Simpson
2534 Ragland Road
Winterville, NC 28590
*Pro Se Plaintiff*

This the 24th day of November, 2026.

**CRANFILL SUMNER LLP**

By: /s/ Alexandra C. Williams
ALEXANDRA C. WILLIAMS
N.C. State Bar No. 60709
5535 Currituck Drive, Suite 210
Wilmington, NC 28403
Telephone: (910) 777-6000
Facsimile: (910) 777-6111
E-mail: awilliams@cshlaw.com
*Attorney for Defendant*